(No. 80-CC-0056—

JOHN HAGENSICK, Administrator of the Estate of JAY C. HAGENSICK, Deceased, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Order filed July 14, 1992.*

RICHARD T. SIKES, for Claimant.

ROLAND W. BURRIS, Attorney General (JANICE SCHAFFRICK, Assistant Attorney General, of counsel), for Respondent.

1

## ORDER

MONTANA, C.J.

This cause is before the Court on Respondent's motion for summary judgment, Claimant's answer to motion for summary judgment, and Respondent's reply in support of its motion for summary judgment.

Claimant's complaint in the Court of Claims incorporates by reference a complaint filed in the Circuit Court of Cook County in case No. 79 L 14226 concerning the events leading to this suit. In said complaint Claimant alleges in relevant part as follows:

"John R. Hagensick, Administrator of the Estate of Jay C. Hagensick, deceased, complains of the defendants, the Forest Preserve District of Cook County, a Municipal Corporation, Cook County, Illinois, a Body Politic, and the State of Illinois, and states:

1. That plaintiff is the duly qualified and acting Administrator of the Estate of Jay Charles Hagensick, deceased, having been so appointed by the Circuit Court of Cook County on December 18, 1978.

2. The Forest Preserve District of Cook County is a Municipal Corporation organized and existing under the laws of the State of Illinois.

3. At all times relevant, defendants, the Forest Preserve District of Cook County, Cook County and the State of Illinois owned, operated, and controlled a certain so-called forest preserve in Cook County, Illinois, located at 107th Street and La Grange Road, including a certain snowmobile path and highway snow fences in connection therewith.

4. That prior to January 28, 1978, defendants, and each of them, had erected a crossbar structure in connection with the erection and maintenance of a snow fence, at the aforesaid location.

5. That it was the duty of the defendants and of each of them to erect and maintain said snow fence in such a manner as not to interfere with the lawful use of said forest preserve.

6. That on or about January 28, 1978, plaintiff's intestate, Jay Charles

Hagensick, while lawfully using the aforesaid forest preserve snowmobile area on his snowmobile, came in contact with an iron crossbar structure as aforesaid which caused plaintiff's intestate to be thrown violently from his snowmobile and resulted in his death.

7. That notwithstanding the duty of each defendant to maintain and erect structures so as not to interfere with the lawful use of said forest preserve, each defendant violated its duty to lawful uses thereof, and in particular to plaintiff's intestate, in one or more of the following respects:

a) Maintained a so-called snowmobiling area in a place where an artificial structure had been placed so as to institute a hazard to snowmobilers.

b) Placed a crossbar device in an area that had been designed as a snowmobiling area with [sic] due regard for the use intended for such location.

c) Failed to adequately warn snowmobilers of the hazard created by the placing of a crossbar device.

d) Erected a crossbar device in an area intended for use by snowmobilers when it knew or should have known that the placing of such device constituted a hazard to the use for which the area was intended.

8. That as a proximate result of one or more of the foregoing breaches of duty owed by defendants, and by each of them, to plaintiff's intestate, plaintiff's intestate suffered an accident and his death as aforesaid."

A previous motion to dismiss filed by Respondent indicated that in the action against the Forest Preserve of Cook County (Forest Preserve), the Forest Preserve was found by the circuit court to owe no duty to Claimant's decedent to keep the premises safe for snowmobiling or to give a warning of any unsafe condition. Respondent asserted in its motion to dismiss that the claim against Respondent should be dismissed based on sections of the Illinois Snowmobile Registration and Safety Act (Snowmobile Act), Ill. Rev. Stat. 1983, ch. 95½, pars. 605—1(I), (J).

Those sections stated:

"I. An owner, lessee, or occupant of premises owes no duty to keep the premises safe for entry or use by others for snowmobiling, or to give warning of any unsafe condition or use of or structure or activity on such premises. This subsection does not apply where permission to snowmobile is given for a valuable consideration other than to this State, any political subdivision or municipality thereof, or any landowner who is paid with funds from the Snowmobile Trail Establishment Fund."

4

"J. An owner, lessee or occupant of premises who gives permission to another to snowmobile upon such premises does not thereby extend any assurance that the premises are safe for such purpose, or assume responsibility for or incur liability for any injury to person or property caused by any act of persons to whom the permission is granted. This subsection shall not apply where permission to snowmobile is given for a valuable consideration other than to this State, any political subdivision or municipality thereof, or any landowner who is paid with funds from the Snowmobile Trail Establishment Fund."

Respondent's position was that, based on these sections, the claim against Respondent should be dismissed because Respondent erected the snow fence on the Forest Preserve's property with the Forest Preserve's permission. Therefore the immunity applicable to the Forest Preserve should also extend to the Respondent. Respondent further noted that the Illinois Supreme Court had upheld the constitutionality of the Snowmobile Act in *Ostergren v. Forest Preserve District* (1984), 104 Ill. 2d 128, 471 N.E.2d 191.

Claimant's answer to the motion to dismiss asserted the State of Illinois had not shown it was an owner, lessee or occupant of the premises upon which the occurrence took place nor did the State of Illinois give permission to Claimant's intestate to snowmobile. Said answer further asserted the State of Illinois had not brought itself within the ambit of the statute and had shown no authority why this immunity statute should also extend to it.

The Court determined Respondent had shown no authority why the statute should extend to the State. The motion to dismiss was therefore denied.

The claim is now before the Court on a motion for summary judgment filed by Respondent. Respondent states on page 2 of the motion:

"The respondent erected the snow fence to prevent blowing snow from entering on Illinois Route 45 during periods of inclement weather. (See Exhibit A, Affidavit of Edward K. Kolton which is attached hereto.) The

Cook County Forest Preserve District (hereinafter 'Forest Preserve') gave oral permission for respondent to go upon its land to erect the snow fence in question. (See Exhibit C, Affidavit of Arthur L. Janura and is attached hereto.)"

The Court notes that an Exhibit C was not attached to the motion. The affidavit of Arthur L. Janura was labeled Exhibit B.

Respondent again asserts in the motion that the State is immune from liability under the Snowmobile Act. On page 3 of the motion Respondent states:

"In the instant case, the Cook County Forest Preserve granted verbal permission for respondent to erect the snow fence in question upon its property. By doing so, the Forest Preserve gave respondent a license to go upon its property. A license in respect to real property is permission to do an act or a series of acts upon the land of another without possessing any estate or interest in such land. *Mueller v. Keller*, 18 Ill. 2d 334, 164 NE2d 28 (1960). As such, respondent was occupying the Forest Preserve's premises as a licensee. Thus, respondent falls within the ambit of section 605-1(I) as an 'occupant of the premises' and owes no duty to claimant to keep the portion of its premises safe for the purpose of snowmobiling."

Respondent further argues in the motion that public policy requires that Respondent fall within the ambit of the Snowmobile Act. On page 4 of the motion Respondent states:

"In the instant situation, respondent had a duty to maintain its roadways in a reasonable condition for the traveling motorists. The purpose of erecting the snow fence in question was to prevent drifting snow from accumulating into a hazardous condition on the travelled portion of Route 45. (See Exhibit A). It is a matter of public policy for respondent to promote public safety for vehicular traffic. Clearly, the safety of the travelling public on state roadways outweighs the need to remove the snow fence in question in order to make the forest preserve free from all defects that could upset a speeding snowmobile."

In the answer to motion for summary judgment Claimant argues that Respondent was not an occupant of the premises within the meaning of section 605—1(I) of the Snowmobile Act. Claimant submits that the State in this claim is a licensee, a temporary user of property removable at the will of the licensor, and as such is not entitled

to be deemed an occupant covered by the Snowmobile Act. In support of this position Claimant cites *Pioneer Irrigation District v. Smith* (Idaho Sup. Ct. 1930), 285 P. 474; *Labree v. Millville Mfg. Inc.*, (Sup. Ct. App. Div. 1984), 195 N.S. Super 575, 481 A.2d 286; and *Drake v. Ogden* (1989), 128 Ill. 603.

In Respondent's reply in support of its motion for summary judgment, Respondent cites the cases of *Bishop v. Stewart* (Miss. Sup. Ct. 1958), 106 So.2d 899 and *McGee v. Charles F. Smith & Sons Inc.* (Miss. Sup. Ct. 1978), 357 So.2d 930.

This Court agrees with both parties that the State's position in this claim was that of a licensee. The issue that must be resolved is whether as a licensee, the State was also an occupant of the premises and thus covered by the Snowmobile Act. The Court has reviewed the cases cited by both parties and not found them to be persuasive in resolving this claim because the situations presented within them are dissimilar to that presented in the claim at bar. However, a case which does present a situation similar to the claim at bar is *Smith v. Sno Eagles Snowmobile Club, Inc.* (E.D. Wis. 1985), 625 F. Supp. 1579.

In *Smith*, plaintiff, Marlene Smith, was injured when the snowmobile she was driving on a snowmobile trail in Eagle River, Wisconsin, collided with an automobile at a point where the snowmobile trail intersected with a driveway. The snowmobile trail was located on land which included stretches that were privately as well as governmentally owned. The United States Forest Service owned the section of trail where the accident occurred.

The snowmobile trail was planned and constructed by Sno Eagles Club, Inc. (Sno Eagles), and groomed by Headwater Trails, Inc. (Headwater). Both organizations

were voluntary and nonprofit. Sno Eagles would gain permission from landowners to construct snowmobile trails across their property and then do whatever was physically necessary to create the trails on the property. After a trail was constructed signs were erected by Sno Eagles. Once the trail was completed and the signs were in place, Headwater personnel would groom the trail. While grooming the trails, Headwater personnel would carry signs to replace signs they found missing. On the date of the accident, Mrs. Smith was snowmobiling along what was called the 2 East Trail. The 2 East Trail was drawn on a trail map, but was not marked by signs.

Mrs. Smith and her husband filed a lawsuit based on diversity in the United States District Court for the Eastern District of Wisconsin against the automobile driver, Michelle Hafer, as well as Sno Eagles and Headwater, and their respective insurers. Michelle Hafer sought contribution from Sno Eagles and Headwater. The Smiths alleged that Sno Eagles and Headwater were negligent in the maintenance of the trail and in failing to mark the site of the driveway. Since Sno Eagles and Headwater asserted the trail had not been opened as of the time of the accident, the Smiths argued that they were negligent in not marking the trail to indicate it was not yet open.

Sno Eagles and Headwater moved for summary judgment claiming they were exempt from liability by the Wisconsin Recreational Use Statute, Wis. Stat. sec. 29.68, in effect at the time of the accident. That section as cited at 625 F. Supp. 1592 provided:

"(1) ° ° ° An owner, lessee, or occupant of premises owes no duty to keep the premises safe for entry or use by others for hunting ° ° ° snowmobiling ° ° ° or recreational purposes, or to give warning of any unsafe condition or use of or structure or activity on such premises to persons entering for such purpose except as provided in subdivision 3."

Subdivision 3 states:

"This section does not limit the liability which would otherwise exist for willful or malicious failure to guard or to warn against a dangerous condition ° ° °."

The trial judge determined that for Sno Eagles and Headwater to be covered by section 29.68 they had to be within the definition of occupant. However, the term occupant was not defined by section 29.68. The trial judge stated at 625 F. Supp. 1582:

"I have examined several definitions of the noun occupant. Black's Law Dictionary defines occupant as:

'Person having possessory rights, who can control what goes on on premises. One who has actual use, possession or control of a thing.'

Webster's Third New International Dictionary 1560 (G. & C. Merriam Co. 1976) provides a more varied menu of meanings for occupant:

'a: one who takes first possession of something that has no owner and thereby acquires title by occupancy b: one who takes possession under title, lease or tenancy at will 2a: one who occupies a particular place or premises ° ° ° b: one who holds a particular post ° ° ° 3: one who has actual use or possession of something ° ° °.'

The definition of the verb 'to occupy' lends additional meaning to the noun occupant. One of the meanings of the verb 'to occupy' is 'actual use, possession, and cultivation.' Black's Law Dictionary. Occupy and occupant include persons who, while not owners or tenants, have the actual use of land.

When construing statutes, courts must attempt to give meaning to every term used by the Legislature. *County of Columbia v. Bylewski,* 94 Wis.2d 153, 164, 288 N.W.2d 129 (1980). The primary purpose of statutory construction is to determine the intent of the Legislature and to give meaning to that intent. *Id.* While 'occupant' includes definitions of owner and lessee, it also means one who has the actual use of property without legal title, dominion or tenancy. In order to give meaning to 'occupant', the term should be interpreted to encompass a resident of land who is more transient than either a lessee or an owner. Plaintiffs argue that 'occupant' connotes exclusive use. This construction, however, would render the term 'occupant' virtually meaningless, since exclusive possessors and users are usually owners or tenants."

The Smiths and Michelle Hafer argued that Sno Eagles and Headwater were licensees and since licensees were not named in section 29.68, Sno Eagles and Headwater were not exempt from liability. In response to this argument the trial judge stated at 625 F. Supp. 1592-93:

"I agree that Sno Eagles and Headwater may be characterized as licensees; however, this status does not prevent them from also being classified as occupants. Sno Eagles and Headwater occupied the land to the extent of constructing and grooming snowmobile trails. Excluding these defendants from the purview of §29.68 would thwart the statute's purpose.

In enacting §29.68, the Wisconsin Legislature intended to limit the liability of landowners, lessees, and 'occupants' who opened their land to the public without receiving valuable consideration in return. See *Goodson v. Racine*, 61 Wis.2d 554, 559, 213 N.W.2d 16 (1973). The Wisconsin Legislature's intention would not be furthered by excluding non-profit organizations such as Sno Eagles and Headwater from the purview of §29.68. Moreover, to limit the definition of 'occupant' to an exclusive user, an owner, or a lessee, would render the term redundant. I therefore hold that non-profit organizations such as Sno Eagles and Headwater which enter land for a limited purpose, are occupants within the meaning of §29.68, and that their liability is limited by that statutory section."

The Smiths appealed the district court's decision alleging in part that the district court improperly found Sno Eagles and Headwater to be occupants of 2 East Trail and therefore entitled to immunity under Wis. Stat. sec. 29.68. The United States Court of Appeals, Seventh Circuit, affirmed the district court's decision in *Smith v. Sno Eagles Snowmobile Club, Inc.* (7th Cir. 1987), 823 F. 2d 1193.

In the claim at bar, the State of Illinois is in a position similar to that of Sno Eagles and Headwater in *Smith*. At the time of the decedent's accident, its status with respect to a portion of land the snow fence was upon was that of a licensee. The section of the Snowmobile Act relied upon by the State in the claim at bar as exempting it from liability is similar to the statute relied upon by Sno Eagles and Headwater in *Smith*. Each exempts from liability an owner, lessee or occupant of premises without defining those terms. The State in the claim at bar is in the same position as Sno Eagles and Headwater in *Smith* in that, as a licensee, it also must be deemed an occupant within the ambit of the Snowmobile Act to be exempt from liability.

10

The reasoning of the trial judge in *Smith* in determining that Sno Eagles and Headwater, as licensees, were also occupants entitled to immunity under Wis. Stat. sec. 29.68 is persuasive and applicable in resolving this claim. Based upon it, we find that at the time of the decedent's accident, the State was an occupant of the Forest Preserve of Cook County within the ambit of section 605—1(I) of the Snowmobile Act and therefore owed no duty to keep the portion of the premises it occupied safe for entry or use by others for snowmobiling, or to give warning of any unsafe condition or use of or structure or activity of such premise. The State's status as a licensee did not prevent it from also being an occupant covered by section 605—1(I).

Since we have found the State in this claim to have been covered by section 605—1(I), we do not find it necessary to address the public policy argument presented in Respondent's motion for summary judgment.

Based on the foregoing, it is hereby ordered that Respondent's motion for summary judgment be, and hereby is, granted and that this claim accordingly be denied.