149 Wis.2d 624 (1989)
439 N.W.2d 615
IN RE the PATERNITY OF C.J.H., d/o/b 8/20/85: J.G., C.G., and S.G., Appellants,
v.
STATE of Wisconsin, Respondent.
No. 88-0983.
Court of Appeals of Wisconsin.
Submitted on briefs February 13, 1989.
Decided March 15, 1989.
*626 On behalf of the appellants, the cause was submitted on the briefs of Michael H. Grady, of Law Office of Henry G. Piano, of Milwaukee.
On behalf of the respondent, the cause was submitted on the briefs of Dennis E. Kenealy, Ozaukee county corporation counsel.
An amicus curiae brief was submitted by La Follette & Sinykin of Madison on behalf of the American Civil Liberties Union of Wisconsin Foundation, Inc.
Before Brown, P.J., Nettesheim and Sundby, JJ.
NETTESHEIM, J.
This is a paternity case in which the minor father and his parents (collectively, grandparents) appeal from a trial court order directing the grandparents to contribute to the support of C.J.H., the minor child who is the subject of these proceedings.[1] The order was made pursuant to the grandparent liability law, sec. 49.90(1)(a)2, Stats.[2] Because C.J.H. was conceived and born[3] prior to the effective date of the *627 statute, we conclude that the grandparents cannot be held liable for C.J.H.'s support. Accordingly, we reverse.
The material facts are undisputed. C.J.H. was born on August 20, 1985. The grandparent liability law, sec. 49.90(1)(a)2, Stats., became effective three months later on November 20, 1985. Secs. 15, 45, 1985 Wis. Act 56. Thereafter, on June 13, 1986, the minor father admitted paternity of C.J.H. The trial court then ruled that the paternal grandparents were liable for C.J.H.'s support under sec. 49.90(1)(a)2. The father and paternal grandparents appeal the judgment. Additionally, the American Civil Liberties Union of Wisconsin Foundation, Inc. (ACLU) submitted an amicus curiae brief.
On appeal, the grandparents raise statutory, constitutional, and procedural objections to the trial court's judgment. However, we need only address the grandparents' statutory construction argument, as it is dispositive of this appeal.[4]
The issues we address are: (1) whether the grandparent liability law, sec. 49.90(1)(a)2, Stats., is a remedial or substantive law; (2) whether the legislature has indicated its intent that the law be applied retroactively; and (3) whether the trial court's application of the grandparent liability law was, in fact, retroactive.

*628 STANDARD OF REVIEW AND TEST FOR RETROACTIVE/PROSPECTIVE ANALYSIS
[1, 2]
The application of a statute to a set of facts presents a question of law which we review independently of the trial court's conclusion. In re K.N.K., 139 Wis. 2d 190, 198, 407 N.W.2d 281, 285 (Ct. App. 1987). Similarly, whether a statute is prospective or retroactive presents a question of statutory construction to which we also apply an independent standard of review. See Behnke v. Behnke, 103 Wis. 2d 449, 452, 309 N.W.2d 21, 22 (Ct. App. 1981).
[3, 4]
Legislation is presumed to operate prospectively "unless the statutory language clearly reveals by express language or necessary implication an intent that it apply retroactively." Chappy v. LIRC, 136 Wis. 2d 172, 180, 401 N.W.2d 568, 572 (1987). This presumption applies even where the statute is ambiguous as to its retroactive effect. Shaurette v. Capitol Erecting Co., 23 Wis. 2d 538, 544, 128 N.W.2d 34, 37 (1964). The only exception to this general rule is if a statute is procedural or remedial, rather than substantive, then the statute is generally given retroactive application. Gutter v. Seamandel, 103 Wis. 2d 1, 17, 308 N.W.2d 403, 411 (1981). Procedural or remedial statutes merely confirm already-existing rights and promote remedies by curing defects and adding to the means of enforcing existing obligations. Id. at 17-18, 308 N.W.2d at 411.

REMEDIAL/SUBSTANTIVE ANALYSIS
We first address whether the statute is remedial or substantive. The state contends that the grandparent liability statute is remedial and, thus, may be applied *629 retroactively. At the same time, the state concedes that the statute creates new rights to those entitled to bring a paternity action against a class of persons not previously responsible for the support of illegitimate children. We conclude that the state's concession on this latter point is correct and compels the conclusion that the statute is substantive.
Grandparents had no obligation to support the children of their dependents before the enactment of sec. 49.90(1)(a)2, Stats. Under the law at the time of C.J.H.'s conception and birth, those entitled to bring paternity actions (see sec. 767.45(1), Stats.) could look only to a natural parent for support. Sec. 52.01(1), Stats. (1983-84). The grandparent liability statute created a new right for those entitled to bring paternity actions. Such persons and entities may now assert support claims against grandparents. Sec. 49.90(1)(a)2. Similarly, the statute also imposed new legal obligations. Grandparents became liable under the new law to support the children of their dependent children. Id.
This new law did far more than merely "confirm rights already existing" or operate "in furtherance of the remedy, by curing defects and adding to the means of enforcing existing obligations." Gutter, 103 Wis. 2d at 17, 308 N.W.2d at 411. In fact, the law accomplished quite the opposite by creating: (1) new and expanded rights to those entitled to bring paternity actions; and (2) new liability to a class of persons not previously responsible for the support of illegitimate children.
[5]
We therefore conclude that sec. 49.90(1)(a)2, Stats., is a substantive statute carrying a presumption of prospective application only.

*630 LEGISLATIVE INTENT
Because we conclude that sec. 49.90(1)(a)2, Stats., is a substantive statute, the presumption of prospective operation applies unless the legislature clearly, by express language or necessary implication, provided for the retroactive application of the statute. Chappy, 136 Wis. 2d at 180, 401 N.W.2d at 572.
The statute carries no express language stating that it is to be applied retroactively. Nor are we satisfied that any implied indication of retroactivity is present. In fact, just the opposite is indicated.
The state legislative policy which is embodied in the enactment of sec. 49.90(1)(a)2, Stats., recites as follows:
SECTION 2. Legislative findings. (1) The legislature finds that the high number of unintended or unwanted pregnancies and the resultant high number of abortions is a tragic and undesirable consequence of complex societal problems .... The legislature finds that a multifaceted approach to reducing abortions is necessary and desirable and must involve not only private and public institutions and agencies but, more important, families
....
....
(3) The legislature believes that adolescents should be encouraged to take responsibility for the consequences of their actions. It is clear that among adolescents the burden of unwanted pregnancies presently is borne by the adolescent mothers and that ways must be found for adolescent fathers, as well as the parents of adolescents, to share in this responsibility. [Emphasis added.]
Sec. 2, 1985 Wis. Act 56.
*631 Laudable as these concerns and goals are on a personal and private basis between parent and child, they did not become the pronounced public policy of this state until November 20, 1985. At the time of C.J.H.'s conception and birth, this state had not as yet adopted the policy that "[s]trong efforts must be made to ensure that unintended pregnancies do not become unwanted pregnancies." Id.
To serve this end, the statute encourages parents and other entities to "develop programs to promote constructive life values and responsible behavior, with emphasis on educating and counseling adolescents." Id. The new law also carries punitive aspects. If a dependent son fathers or a dependent daughter conceives a child (regardless of adherence to the goals of the statute by the grandparents), the duty to support the offspring can be visited upon the grandparents. The statute also allows for criminal prosecution of grandparents who fail to support a child of their dependent child. Thus, the statute penalizes the grandparents regardless of whether they have promoted the policy of the statute.
[6]
The legislative intention and scheme here are clear: the legislature announced a public policy and encouraged and expected parents of adolescents to foster it. To encourage this participation, the legislature allowed for the imposition of civil and criminal penalties against grandparents if their minor dependent fathered or conceived a child. In the case at bar, the grandparents could not have promoted this official policy because it did not exist. We therefore conclude that the statutory scheme carries no express or implied indication for retroactive application.

*632 PROSPECTIVE OR RETROACTIVE APPLICATION IN THE TRIAL COURT
Last, the state, regardless of the prospective/retroactive question, argues that the trial court's application of the statute in this case was not retroactive. The state's argument follows the reasoning of the trial court which determined that the adjudication of paternity, rather than the conception or birth of the child, is the event which triggers the support obligation of the paternal grandparents. Thus, the trial court determined that the paternal grandparents in this case could be held liable for support under the grandparent liability statute, although the statute had not taken effect until after C.J.H.'s conception and birth.
The state premises its argument on sec. 767.45(1), Stats., which controls who may bring a paternity action and sec. 893.88, Stats., which provides that such action may be brought at any time within nineteen years of the birth of the child. Since the state brings its action as a qualified party under sec. 767.45(1) and since the child is under age nineteen, the state reasons that this action for support against the grandparents is proper.
The state's argument is too narrow and simplistic in a prospective/retroactive analysis for it examines only who may bring the action. It ignores the additional inquiry we have already addressed: whether the law creates new and expanded rights to those entitled to bring paternity actions and new liability to a class of persons not previously responsible for the support of illegitimate children. With both of these considerations in mind, we address whether the trial court's application of the statute against the grandparents in this case was retroactive.
*633 Much of our earlier discussion controls this issue. As we have already concluded, sec. 49.90(1)(a)2, Stats., is a substantive law creating a new duty not previously recognized in the common or statutory law. By this new law, the legislature sought to address the social problem of unintended or unwanted teen pregnancies and the resultant high number of abortions. To this end, the legislature: (1) announced a public policy; (2) established programs to address this social problem; (3) encouraged parents and their dependent children to follow it; and (4) visited civil and criminal penalties upon grandparents whose children failed to sexually comport themselves in accordance with such policy.
[7]
In this case, the behavioral failure of the minor father to adhere to this policy occurred before the statute was effective. The penalty is visited upon the grandparents for such behavioral failure. The trial court's ruling seeks to bind the facts and the grandparents in this case to a legislative policy and legal duty which did not then exist. As noted earlier, the grandparents could not have promoted this official policy because it did not then exist. Thus, the trial court's application of the statute was retroactive.
By the Court.Order reversed.
NOTES
[1] This appeal is taken in the name of both the minor father and the grandparents. Single counsel represents all appellants. The issue on appeal is whether the grandparents can be held liable under the grandparent liability statute. A conflict between the interests of the minor parent and those of his parents could arise in a proceeding under this statute. Since, however, the statute invokes liability of the grandparents only to the extent the minor parent is unable to do so, and since there is no claim in this case that the minor parent is presently able to support the child, no actual conflict of interest presently appears.
[2] The grandparent liability laws, secs. 49.90(1)(a)2, (11)(a), and 948.22, Stats., contain numerous "sunset" provisions. After December 31, 1989, grandparents cease to be liable under either the civil or criminal provisions for payment of grandchild support. See secs. 49.90(1)(a)3, (11)(b), 948.22(1)(b)2.
[3] Because both C.J.H.'s conception and birth occurred before the enactment of the grandparent liability law, we need not decide in this case which date controls for purposes of imposing grandparental liability under sec. 49.90(1)(a)2, Stats.
[4] The grandparents' procedural complaint is that the trial court failed to first evaluate how much the minor father, S.G., could pay toward support of C.J.H.

The constitutional arguments are based on due process and equal protection grounds.